**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Devin Jamel Johnson, Appellant.

Appellate Case No. 2019-000938

———————

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-059
Heard April 7, 2022 – Filed February 19, 2025

———————

**AFFIRMED**

———————

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General William Joseph Maye, all of
Columbia; and Solicitor Scarlett Anne Wilson, of
Charleston, all for Respondent.

———————

**PER CURIAM:** Devin Jamel Johnson appeals his conviction of murder. Johnson has twice been convicted of the murder of Akeem Smalls. This court reversed his first conviction. *State v. Johnson*, 418 S.C. 587, 795 S.E.2d 171 (Ct. App. 2016). Johnson was retried and again convicted of murder. Johnson appealed his second conviction to this court. *State v. Johnson*, 438 S.C. 110, 882 S.E.2d 190 (Ct. App. 2022), *rev'd and remanded*, 444 S.C. 442, 908 S.E.2d 102 (2024). On appeal, Johnson argued the trial court erred in admitting into evidence his statement to law enforcement following his interrogation, removing a juror and replacing him with an alternate juror midtrial, and instructing the jury on accomplice liability. *Id.* at 114, 882 S.E.2d at 192. Following oral argument, this court reversed that conviction, finding the trial court had erred in instructing the jury on accomplice liability. *Id.* at 199-200, 882 S.E.2d at 128-30. This court did not address Johnson's remaining arguments because our decision on the accomplice liability jury instruction was dispositive. *Id.* at 130 n.13, 882 S.E.2d at 200 n.13. The State filed a petition for writ of certiorari, which our supreme court granted. The supreme court reversed this court's decision and found the trial court had not erred in instructing the jury on accomplice liability. *State v. Johnson*, 444 S.C. 442, 908 S.E.2d 102 (2024). The supreme court remanded the case to this court to decide Johnson's remaining issues on appeal.[1] *Id.* at 453, 908 S.E.2d at 108. We now consider those two issues. We affirm.

1. The trial court did not abuse its discretion by finding Johnson voluntarily provided a statement to law enforcement at the end of an interrogation and thus not suppressing the statement. "On appeal, the trial [court's] ruling as to the voluntariness of [a] confession will not be disturbed unless so erroneous as to constitute an abuse of discretion." *State v. Anderson*, 440 S.C. 124, 138, 889 S.E.2d 615, 622 (Ct. App. 2023) (first alteration in original) (quoting *State v. Myers*, 359 S.C. 40, 47, 596 S.E.2d 488, 492 (2004)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "Our role when reviewing a trial court's ruling concerning the admissibility of a statement upon proof of its voluntariness is not to reevaluate the facts based on our view of the preponderance of the evidence." *State v. Breeze*, 379 S.C. 538, 543, 665 S.E.2d 247, 250 (Ct. App. 2008). Instead, our standard of review is limited to deciding whether any evidence supported the trial court's ruling. *Id.* Accordingly, we will not reverse the trial court's findings on a

---

[1] On remand now, we decide this case without oral argument pursuant to Rule 215, SCACR.

statement's voluntariness unless those findings are so erroneous they demonstrate an abuse of discretion. *Id.*

Johnson contends his statement given at the end of a five-hour-long interrogation by law enforcement was involuntary because during the interrogation he was denied cigarettes unless he cooperated and was told he would never see his daughter again. A statement is involuntary when the circumstances surrounding it overbore the suspect's will. *Id.* at 544, 665 S.E.2d at 250. To determine voluntariness, "the trial court must examine the totality of the circumstances surrounding the statement." *Id.* In that examination, the trial court may consider the following factors: "the crucial element of police coercion; the length of the interrogation, its location, [and] its continuity; [and] the defendant's maturity, education, physical condition, and mental health." *State v. Miller*, 375 S.C. 370, 385, 652 S.E.2d 444, 452 (Ct. App. 2007) (citations omitted) (quoting *Withrow v. Williams*, 507 U.S. 680, 693 (1993)). Additional factors the trial court can consider include the "background, experience, and conduct of the [defendant]; [the defendant's] age; [the] length of custody; police misrepresentations; . . . threats of violence; and promises of leniency." *Id.* at 386, 652 S.E.2d at 452. "Coercive police activity is a necessary predicate to finding a statement is not voluntary." *Id.* "A statement may not be 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] obtained by the exertion of improper influence.'" *Id.* (alterations in original) (quoting *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990)). However, "[f]ew criminals feel impelled to confess to the police purely of their own accord without any questioning at all. . . . Thus, it can almost always be said that the interrogation caused the confession." *State v. Johnson*, 422 S.C. 439, 457, 812 S.E.2d 739, 748 (Ct. App. 2018) (omission in original) (quoting *State v. Von Dohlen*, 322 S.C. 234, 244, 471 S.E.2d 689, 695 (1996), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 832 S.E.2d 575 (2019)). "[P]olice may use some psychological tactics in eliciting a statement from a suspect. . . . These ploys may play a part in the suspect's decision to confess, but so long as that decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." *Id.* at 457, 812 S.E.2d at 748-49 (omission in original) (quoting *Von Dohlen*, 322 S.C. at 244, 471 S.E.2d at 695); *see also id.* at 457, 812 S.E.2d at 749 (explaining statements that a defendant's daughter "would think he was a cold-blooded killer who only survived because [he] ran out of bullets" did not amount to a "tangible threat related to children or family members," which would render a confession involuntary, because those statements were "more akin to a psychological tactic than actual coercion").

The trial court found law enforcement did not coerce Johnson into making a statement. At the end of his interrogation, Johnson made a statement only after law enforcement allowed him to speak by phone with both his mother and girlfriend. The trial court found any coercion of Johnson arose solely from the people he spoke with during the phone calls. Johnson's comments to law enforcement and demeanor during these calls, which are observable on the video of the interrogation, and testimony from one of the detectives who conducted the interrogation support the trial court's finding Johnson's conversations with his mother and girlfriend influenced him to make a statement admitting he had some involvement in the shooting. When the evidence about a confession conflicts, the trial court must first find whether the statemen is valid. *Von Dohlen*, 322 S.C. at 243, 471 S.E.2d at 695. "On appeal, the conclusion of the trial [court] as to the voluntariness of a confession will not be reviewed unless so erroneous as to show an abuse of discretion." *Id.* Because the record contains evidence to support the trial court's finding as to voluntariness, we affirm the trial court's denial of Johnson's motion to suppress his statement to law enforcement. *See State v. Hillary*, 441 S.C. 239, 251-52, 892 S.E.2d 541, 547 (Ct. App. 2023) ("Given our 'any evidence' standard of review and the existence of an uncontradicted audio recording of the interview, our task here is narrow and straightforward. If the actions and statements of the officers as captured on the recording can support the [trial] court's view that the confession was voluntary under our state's precedents, we should affirm. Put another way, reversal would be proper only if the events on the recording *cannot* support the [trial] court's ruling.").

2. The trial court's decision to dismiss a juror and replace him with an alternate juror midtrial did not prejudice Johnson and thus does not warrant reversing his conviction. "A decision on whether to dismiss a juror and replace [the juror] with an alternate is within the sound discretion of the trial court[] and . . . will not be reversed on appeal absent an abuse of discretion." *State v. Bell*, 374 S.C. 136, 147, 646 S.E.2d 888, 894 (Ct. App. 2007). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265.

"The trial court has the solemn duty to ensure 'that every juror is unbiased, fair[,] and impartial.'" *State v. Rowell*, 444 S.C. 109, 113, 906 S.E.2d 554, 556 (2024) (quoting *State v. Gulledge*, 277 S.C. 368, 370, 287 S.E.2d 488, 489 (1982), *overruled on other grounds by Rowell*, 444 S.C. at 116, 906 S.E.2d at 557). "By allowing parties to reject a certain number of jurors who cannot be challenged for cause, the peremptory strike right enhances the fairness of the trial process, which in turn elevates public confidence in our justice system." *Id.* at 114, 906 S.E.2d at

556. "Should jurors give false or misleading answers during voir dire, the parties may mistakenly seat a juror who could have been excused by the court, challenged for cause by counsel, or stricken through the exercise of a peremptory challenge." *State v. Coaxum*, 410 S.C. 320, 327, 764 S.E.2d 242, 245 (2014), *overruled on other grounds by Rowell*, 444 S.C. at 116, 906 S.E.2d at 557. "Where a party claims a juror has withheld material information in response to a *voir dire* question, the trial court must determine, preferably after a hearing, whether the juror's withholding suggests bias." *Rowell*, 444 S.C. at 115, 906 S.E.2d at 557.

During trial, the State raised a concern a juror might have fallen asleep during testimony, and the trial court stated it had noticed the same. The trial court stated it would wait until the end of the trial to determine how the parties wanted to address it. Later in the trial, while testimony on behalf on the State was still ongoing, that same juror informed the court he knew a witness who had already testified. During voir dire, the juror had not responded when the trial court read a list of names and asked prospective jurors to indicate if they were related to or socially or casually acquainted with any of those people. When the trial court informed the parties of the juror's disclosure, it provided the juror stated he "just didn't recognize her." The State asserted it would have used a peremptory strike on the juror if it had known of the relationship during voir dire, even though the juror indicated the relationship would not influence him. The State provided that it generally did not seat jurors who knew a witness. While Johnson argued the State initially indicated off the record it would not have used a peremptory challenge on the juror, the State later stated on the record it would have used a peremptory challenge if it had learned of the relationship during voir dire.[2] The trial court removed the juror and replaced him with an alternate juror. After the conclusion of testimony, the trial court made further statements about the removal of the juror, describing how the juror's sleeping impacted the court's decision to remove that juror. The court explained that if the juror was asleep while the witness he knew testified, the juror might have relied on his prior relationship to decide what weight to give that witness's testimony during deliberations, instead of his observations of that witness during her testimony. The court noted it found that witness's demeanor unusual.

"We grant 'broad deference' to the trial [court's] credibility conclusions in claims of jury misconduct." *State v. Tucker*, 423 S.C. 403, 415, 815 S.E.2d 467, 473 (Ct. App. 2018) (quoting *State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000)). "Leaving credibility determinations in jury misconduct claims to trial [courts]

---

[2] During jury selection, the State had used only one peremptory challenge.

means respecting their decision that they have enough evidence to weigh it at all . . . ."  *Id.* at 414, 815 S.E.2d at 472-73.

Recently, the supreme court simplified a trial court's determination in deciding what action to take when a juror has failed to disclose information during voir dire.  *See Rowell*, 444 S.C. at 115-16, 906 S.E.2d at 557 ("[W]hen a juror untruthfully answers or fails to answer a material *voir dire* question, the juror's bias may not be presumed, and a new trial may be ordered only when prejudice is proven by showing the concealed information reveals a potential for bias *and* would have made an objectively material difference in the moving party's use of a peremptory strike or resulted in a successful challenge for cause.").  Whether the juror concealed information intentionally or unintentionally no longer matters.  *See id.* at 116, 906 S.E.2d at 557 (overruling "the 'intentional versus unintentional' framework erected by the line of cases that began with . . . *Gulledge* and includes *Coaxum*" (citation omitted)).

In *Coaxum*, our supreme court acknowledged that because a juror's failure to disclose had been unintentional, "the trial court likely would have been justified in refusing to excuse [the j]uror."  410 S.C. at 330, 764 S.E.2d at 247.  However, the supreme court ultimately determined the trial court had not abused its discretion in removing the juror because the trial court had conducted a "thorough inquiry" into the State's "strategy in seating or striking prospective jurors."  *Id.*  The supreme court explained that when "a juror's nondisclosure is unintentional, the trial court *may exercise its discretion* in determining whether to proceed with the trial with the jury as is, replace the juror with an alternate, *or* declare a mistrial."  *Id.* at 328, 764 S.E.2d at 246 (emphasis added).  The supreme court noted, "[T]he trial [court] should exhaust other methods to cure possible prejudice before aborting a trial."  *Id.* at 327, 764 S.E.2d at 245 (quoting *State v. Kelly*, 331 S.C. 132, 142, 502 S.E.2d 99, 104 (1998)).

Even assuming the trial court abused its discretion in removing the juror in the present case, to warrant a reversal of Johnson's conviction, he must show the trial court's decision to remove the juror and replace the juror with the alternate juror prejudiced him.  *See State v. Rogers*, 263 S.C. 373, 382, 210 S.E.2d 604, 609 (1974) ("[T]he general principle that error must be prejudicial in order to be ground for reversal applies to rulings on excusing a juror."); *id.* at 381, 210 S.E.2d at 608 (providing the trial court's discretion in "excusing jurors . . . will not be interfered with unless it is clearly shown to have been abused *to the actual prejudice of the complaining party*" (emphasis added) (quoting 50 C.J.S. *Juries* § 205)).  Johnson asserts the supreme court erred in *Coaxum* by requiring a defendant to show

prejudice to receive a new trial when a juror is removed against the defendant's wishes. *See Coaxum*, 410 S.C. at 325-26, 331, 764 S.E.2d at 244, 247 (finding when the trial court removed a juror at the State's request after an unintentional nondisclosure, the defendant had to "show a *prejudicial* abuse of discretion" to receive a new trial (emphasis added)). We are bound by the supreme court's holding in *Coaxum*. *See State v. Phillips*, 416 S.C. 184, 194, 785 S.E.2d 448, 453 (2016) ("[I]t is incumbent upon the court of appeals to apply th[e supreme c]ourt's precedent."). While *Rowell* overruled *Coaxum* as explained above to eliminate any distinction by the trial court between intentional and nonintentional nondisclosure, in *Rowell* the defendant did not learn of a juror's nondisclosure until after the jury found him guilty. *Rowell*, 444 S.C. at 112, 906 S.E.2d at 555. The defendant moved for a new trial, which the trial court denied. *Id.* The supreme court remanded the case to the trial court for a hearing on the nondisclosure. *Id.* at 117, 906 S.E.2d at 558. *Rowell* explained that when a juror has not disclosed information during voir dire, "a new trial may be ordered only when prejudice is proven by showing the concealed information reveals a potential for bias *and* would have made an objectively material difference in the moving party's use of a peremptory strike or resulted in a successful challenge for cause." *Id.* at 115-16, 906 S.E.2d at 557. Accordingly, *Rowell* did not alter *Coaxum*'s holding that on appeal, to warrant reversal, the appellant must show the trial court's removal of a juror prejudiced the appellant. Here, at the time of removal, Johnson wished to proceed without removing the juror and the State wanted the juror removed. At no point during trial, including following the removal, did either side argue for a new trial. On appeal, Johnson seeks a new trial as the remedy for the error he alleges the trial court made in removing the juror. *Rowell* does not impact the "fundamental principle of appellate procedure . . . that a challenged decision must be both erroneous and prejudicial to warrant reversal." *In re Care & Treatment of Gonzalez*, 409 S.C. 621, 636, 763 S.E.2d 210, 217 (2014); *see also State v. Locklair*, 341 S.C. 352, 365, 535 S.E.2d 420, 427 (2000) ("Error without prejudice does not warrant reversal." (quoting *State v. McWee*, 322 S.C. 387, 393, 472 S.E.2d 235, 239 (1996)); *State v. Patterson*, 367 S.C. 219, 224, 625 S.E.2d 239, 242 (Ct. App. 2006) ("In order for an error to warrant reversal, the error must result in prejudice to the appellant.").

Johnson maintains instead of relying on *Coaxum*, this court should rely on the supreme court's earlier decision in *State v. Stone* instead. *See State v. Stone*, 350 S.C. 442, 448-49, 567 S.E.2d 244, 247-48 (2002) (finding the trial court abused its discretion by removing a juror who failed to disclose she knew a witness who testified during the sentencing phase of a death penalty trial when the "scant acquaintance would neither have supported a challenge for cause nor" affected the

State's exercise of its peremptory challenges).  In *Stone*, a defendant convicted of murder and other offenses and sentenced to death argued on appeal the trial court had committed errors at both the guilt and sentencing phase.  *Id.* at 444-52, 567 S.E.2d at 245-49.  The supreme court affirmed his convictions but reversed the death penalty sentence and remanded for a new sentencing proceeding.  *Id.* at 444, 567 S.E.2d at 245.  As to the defendant's allegations of error arising out of the guilt phase of the trial, the supreme court found the trial court had not erred.  *Id.* at 445-47, 452, 567 S.E.2d at 246-47, 249.  However, the supreme court found the trial court committed multiple errors during the sentencing phase.  *Id.* at 448-52, 567 S.E.2d at 247-49.  As to the error in removing the juror, the supreme court found the trial court had abused its discretion but did not state the error warranted reversal.  *Id.* at 448-49, 567 S.E.2d at 247-48.  However, in regards to the remaining errors at the sentencing stage, the supreme court found those errors, which all pertained to jury instructions, required reversal.  *Id.* at 449-52, 567 S.E.2d at 248-49.  Accordingly, we do not read *Stone* as requiring a new trial without first considering prejudice, even when a trial court abuses its discretion in removing a juror.

In this case, Johnson made no allegation the alternate juror who replaced the removed juror was not qualified or was treated differently from the other jurors.  *See* S.C. Code Ann. § 14-7-1340 (2017) (providing "alternate jurors . . . shall have the same opportunities for seeing and hearing the proceedings[,] . . . take the same oath as the jurors already sworn[,] and . . . attend at all times the trial"); S.C. Code Ann. § 14-7-320 (2017) (stating alternate "jurors must be drawn from the same source, in the same manner, have the same qualifications, and be subject to the same examination and challenge as the jurors already sworn").  Accordingly, Johnson has not shown any prejudice from the removal of the juror and replacement with an alternate.  *See Coaxum*, 410 S.C. at 331, 764 S.E.2d at 247 (finding because the jury was indisputably impartial after the juror's removal, the defendant did not meet his burden for receiving a new trial); *State v. Williams*, 321 S.C. 455, 460, 469 S.E.2d 49, 52 (1996) (affirming the seating of an alternate juror because the supreme court "discern[ed] no prejudice to [the defendant] from the seating of the alternate juror"); *State v. McDaniel*, 275 S.C. 222, 223-24, 268 S.E.2d 585, 586 (1980) (affirming the trial court's replacing a juror with an alternate juror approved by both sides at the start of trial when the defendant did not withdraw that approval or move for a mistrial, holding the defendant made no showing as to how the seating of the alternate prejudiced him); *see also Palacio v. State*, 333 S.C. 506, 517, 511 S.E.2d 62, 68 (1999) ("[A] criminal defendant has no right to a trial by any particular jury, but only a right to a trial by a competent and impartial jury."); *State v. Evins*, 373 S.C. 404, 416, 645 S.E.2d 904, 910 (2007)

("[T]he right to serve on a jury. . . belongs to the potential juror, not a litigant."). Therefore, we affirm the trial court's removal of the juror and replacement with an alternate juror.

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**